[Civ. No. 4057.   Second Appellate District, Division Two.—September 1, 1923.]

A. FOSTER, Respondent, v. H. N. GORHAM et al., Appellants.

JOSEPH THOMPSON et al., Respondents, v. H. N. GORHAM, et al., Appellants.

[1] VENDOR AND VENDEE—FRAUDULENT REPRESENTATIONS—DAMAGES—READINESS, ABILITY, AND WILLINGNESS OF VENDEE TO PERFORM—PLEADING—DEFECT IN ALLEGATION CURED.—In an action by a vendee for damages for fraudulent representations concerning the land contracted to be purchased by him, any defect, relating to the readiness, ability, and willingness of the plaintiff to perform his engagements under the agreement, in an allegation in the complaint "That plaintiff has performed each and every covenant and condition required of him to be performed under said contract, except the payment of the balance of the purchase price; that the defendants have no property within the jurisdiction of this court subject to execution; that the property, the subject of this litigation, is included within a tract of land subject to a blanket mortgage of $20,000.00; that if plaintiff should pay the balance due under said contract his claims herein set out could not be satisfied," was immaterial, where the amount due under the contract was shown by cross-complaint, and in rendering a judgment for damages after trial upon the merits the trial court gave defendants credit for the amount unpaid on the contract.

[2] ID.—UNTRUTH OF STATEMENT — FINDING—EVIDENCE.—In such action, the evidence was sufficient to support a finding that the defendants knew the untruth of the statement when they made it; that they owned and controlled a supply of water in a sufficient quantity and volume to irrigate properly, in, a good and sufficient manner, all of a certain tract of land and the lots therein; that they had made a careful investigation of water available and accessible to irrigate said tract of land and the lots therein, and that they had discovered, and owned and controlled, a supply of water of a stated flow situated in a named place, and that said supply of water in said place was available and accessible to irrigate said tract of land and all of the lots therein.

[3] ID.—DISCOVERY OF FRAUD—EVIDENCE—STATUTE OF LIMITATIONS.— In such action, the evidence fails to support the contention of defendants that the fraud practiced by them was discovered more than three years before the commencement of the action and that, therefore, the action was barred by the statute of limitations.

APPEALS from judgments of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kennicott & Williams and Fogel & Beman for Appellants.

Chas. H. Adkins and E. C. Bowen for Respondents.

WORKS, J.—These two actions, practically identical in character, were tried on the same evidence. The appeals in both cases are before us under a single number, the record in each is printed in one and the same transcript and both are briefed together. A single opinion will therefore serve for a treatment of both appeals.

The actions were commenced for the purpose of recovering damages for fraud. Plaintiffs, as vendees, entered into certain contracts with defendants, as vendors, for the purchase and sale of certain lands. The alleged fraud consisted of false representations concerning the property. Plaintiffs had judgment and defendants appeal.

The first point made is that the complaints do not state causes of action. The contention is advanced that an action like these two, that is to say, an action for damages, may not be maintained except upon either a rescission or an affirmance of the particular contract claimed to have been fraudulently obtained. It is further insisted that if such an

action be based upon an affirmance of the contract the complaint must allege the readiness, ability, and willingness of the plaintiff to perform his engagements under the agreement. There is no rescission alleged in the complaints which now lie before us. Upon the score of affirmance the two pleadings contain allegations which are practically alike. This is one of them: "That plaintiff has performed each and every covenant and condition required of him to be performed under said contract, except the payment of the balance of the purchase price; that the defendants . . . have no property within the jurisdiction of this court subject to execution; that the property, the subject of this litigation, is included within a tract of land subject to a blanket mortgage of $20,000.00; that if plaintiff should pay the balance due under said contract his claims herein set out could not be satisfied." Appellants, basing their view on *Hines* v. *Brode,* 168 Cal. 507 [143 Pac. 729], insist that this allegation is insufficient. In that case the complaint alleged, after averring a certain offer to pay a sum due under the contract there in question, that plaintiff "at the time of said offer to pay, ever since and now was and is ready, able and willing to pay said purchase price upon the conditions in said contract until discovery of said fraud." The supreme court determined that the allegation, burdened with the last five words contained in it, amounted to a repudiation instead of an affirmance of the contract. The allegation of the complaints now before us is not subject to that condemnation. Rather, although inartificially conceived, it attempts by positive allegation to meet the effect of *Hines* v. *Brode* as estimated in *Pembrook* v. *Houston,* 41 Cal. App. 54 [181 Pac. 828]. In the opinion there rendered this court said: "The first objection to the sufficiency of the complaint is that it appears therefrom that although the plaintiff had elected to affirm the contract and sue for damages, and is seeking to recover five thousand dollars, she is indebted to the defendant, under the terms of the contract, in the sum of three thousand eight hundred dollars, the unpaid balance of the contract purchase price, with accrued interest thereon, which she has not paid or offered to pay, a portion of which was due before she discovered the facts on which she bases fraud, and that a still larger sum was due before the commencement of this action.

We doubt if the failure to allege payment or tender of the amount for which she was in default at the time of discovering the alleged fraud is fatal to plaintiff's right of action. If the defendant is shown to have been actually guilty of fraud he was not in a position to declare a forfeiture; and we are of the opinion that the fraud, if it existed, justified the plaintiff in withholding the payments to recoup the damages she would be entitled to recover. We so construe the rule laid down by the supreme court in the case of *Hines* v. *Brode,* 168 Cal. 507 [143 Pac. 729]." This view of *Hines* v. *Brode* is based upon a portion of the opinion in that case in which the supreme court said: "Where, under an executory contract, a plaintiff seeks recoupment in damages for deceit while affirming the contract (and it must necessarily be an affirmance if the action be not after rescission) it must be conclusively taken as to such plaintiff that he stands ready and willing to pay the full consideration called for by the contract, and that the damages which he is entitled to recover are no other and no greater than those which would be awarded to a plaintiff who had fully executed his contract. Therefore, in case of an executory contract, from the award which the jury may make because of the fraud, must be deducted the unpaid part of the purchase price or the value of any other consideration." However, the cases of *Hickman* v. *Johnson,* 36 Cal. App. 342 [178 Pac. 145], and *Hulinger* v. *Big Sespe Oil Co.,* 50 Cal. App. 6 [194 Pac. 742], seem to place upon *Hines* v. *Brode* a construction somewhat different from that expressed in *Pembrook* v. *Houston,* although it is possible that, upon a close comparison of the language employed in each, the three opinions of the district court of appeal may be harmonized. It is not necessary, however, to perform that labor here. We have already said that the allegation now under inspection is inartificially couched. Granting that the averment was necessary, it were better if the pleader had alleged in terms that the plaintiffs were ready, able, and willing to make payment of the amounts yet due, but that payment had been withheld for the reasons stated in the allegation as it now stands. [1] Still, we think any defect in the allegation is immaterial under all present circumstances, even if the trial court might properly have sustained the general demurrers which were interposed to

the complaints. The averment is not one in which an element is entirely missing in the legal sense. The reader of it may perceive an attempt to plead that the last payment was withheld only because of the insistence of the plaintiffs that they had the right thus to recoup any damages for which they might obtain judgment. Moreover, in each case a cross-complaint was filed, and these pleadings showed the amount due under the respective contracts. One of the cross-complainants prayed judgment for the amount due and the other demanded a foreclosure of the plaintiff's rights under the contract involved in the action in which it was interposed, because of nonpayment. Further, the fact that the final payments due under both contracts had not been made was not lost sight of at the trial, for the court, in rendering its judgment for damages, gave credit to defendants for the amounts unpaid. It was ascertained by the judgment in each case, after giving these credits, that an amount was still due the plaintiff as damages, and judgment was rendered in each instance for the balance thus ascertained. These circumstances render nugatory appellants' contention that the complaints are insufficient. Under the doctrine of *Noakes* v. *City of Los Angeles,* 179 Cal. 38 [175 Pac. 409], the technical defect in the complaints, if any there may be said to be, was cured. Surely, any error of the trial court in overruling the general demurrers which were presented against the two complaints was without prejudice to the substantial rights of appellants, for the actions were fully tried upon the merits. The result finally attained by the judgment is the one plainly contemplated by *Hines* v. *Brode, supra,* whatever may be the form of the pleadings, considered from the standpoint of perfection, technically designed to lay a foundation for that result.

It is contended that certain findings of the trial court are without support in the evidence. It was found, as finding 5, that appellants "represented to said plaintiff that they owned and controlled a supply of water in a sufficient quantity and volume to irrigate properly, in a good and sufficient manner, all of the said tract of land and lots therein; that they had made a careful investigation of water available and accessible to irrigate said tract of land and the lots therein, and that they had discovered, and owned and con-

trolled, a supply of water, to wit, a flow of water of 20 miner's inches, in a place known as Spanish Canyon, situated in the mountains in the vicinity of said tract of land, and that said supply of water of about 20 miner's inches in said Spanish Canyon was available and accessible to irrigate said tract of land and all of the lots therein. The court finds that the supply of water so owned and controlled by the defendants in said Spanish Canyon, and available for use on said tract was, in fact, at the time the said representations were made, and at the time the contract hereinafter mentioned was made and entered into, not in excess of 2 miner's inches of water, and that the statement that there was 20 miner's inches of water owned and controlled by the defendants, and available to irrigate said tract of land and the lots therein, was made as a positive statement of a fact, but that the said statement and representation was not true, and that the said defendants knew at the time they made the same that such statement was not true.'' This finding, along with others, is assailed by appellants in the following language: ''There is no evidence to sustain the findings of the court that appellants did not believe all of the statements that they made or that they made them without sufficient ground for their belief, and our specifications of the insufficiency of the evidence to justify the findings Nos. 2, 3, 4, 5, 6 and 7 [here are inserted references to parts of the transcript in which the various specifications may be found] in so far as they refer to the findings of the court that the appellants did not believe the representations which they made or that they made them recklessly and without sufficient investigation or failed to attempt to carry out their promises should be sustained.'' This method of presenting appellants' objections to the findings is both general and unsatisfactory, but we shall endeavor to make answer to the points so made as far as we are able to grasp their import and as far as we are able to make application of them. We understand appellants' view to be that the findings named by them are unsupported in so far as it is found, first, that appellants did not believe all the statements or representations that they made; second, that they made them without sufficient ground for a belief in their truth; third, that they made them recklessly and without sufficient investigation; fourth, that they failed to attempt

to carry out promises which they had made. Thus reduced, the presentation of appellants' assault upon the findings is not a model of clarity, but we have made the best epitome we can formulate from the language which counsel have employed. The points thus listed are, however, to be depleted, perforce, by the process of elimination, both as to their number and as to their application to particular findings. In the first place, findings 2, 3, 6, and 7 contain nothing to which either of the four points may be applied. Also, we reject finding 4 from consideration, as it relates only to representations which appellants contend were mere statements of opinion. Without deciding whether or not they are so, we limit our inquiry to finding 5, above set forth, for the reason that it, if supported by the evidence, is sufficient to sustain the judgment. We next eliminate all of the points themselves save one, as having no application to finding 5. The sole survivor of this process is point first, and even that one does not in exact terms meet the situation, for the court found that appellants knew when they made the statement referred to in the finding that it was not true, whereas the point contests a finding that appellants did not believe the statement. We shall, however, consider the point as sufficiently made. [2] Therefore, we have remaining as the sole question concerning the findings: Is the evidence sufficient to support the finding that appellants knew that the following statement was untrue when they made it: That "they owned and controlled a supply of water in a sufficient quantity and volume to irrigate properly, in a good and sufficient manner, all of the said tract of land and lots therein; that they had made a careful investigation of water available and accessible to irrigate said tract of land and the lots therein, and that they had discovered, and owned and controlled, a supply of water, to wit, a flow of water of 20 miner's inches, in a place known as Spanish Canyon, situated in the mountains in the vicinity of said tract of land, and that said supply of water of about 20 miner's inches in said Spanish Canyon was available and accessible to irrigate said tract of land and all of the lots therein?"

Respondents quote to us no evidence supporting this finding, but appellants say in their brief, concerning their activities after the contracts between the parties were con-

summated, omitting references to the transcript: "After
the sale to the respondents, the appellants constructed a
three hundred foot tunnel. They built a large cement
reservoir and a distributing system to the property. They
built roads and spent large sums in the upkeep of the
water system they had installed, and at the very time that
the trial was in progress they had entered into an expensive
contract with Messrs. Patten & Monroe, acknowledged water
experts in Monrovia district, to extend and develop one of
the wells upon the premises. They did not spend the
moneys above mentioned blindly, or in an attempt to get
water where reasonable men would not have so attempted,
but on the contrary made thorough investigation of the
situation before buying the tract or beginning development.
They consulted the best water experts available. They
took advice from Thomas W. Patten and F. M. Monroe,
who for many years had been connected with water develop-
ment in the city of Monrovia. They went over the land
with Mr. Pierce, water expert for R. C. Gillis of the City
Water Works at Santa Monica. They had the opinion of
Mr. Gerlich, city engineer of Monrovia, and from the opin-
ions of all of these men, they were led to believe that they
could reasonably expect to develop five to twenty inches
of water in Spanish Canyon and from twenty-five to thirty
inches from the well. That these ideas were not unreason-
able is shown by the fact that in the first tunnel con-
structed they obtained a flow of from six to eight miner's
inches. Just why this flow did not continue, none of the
experts were able to explain, excepting upon the ground
that the whole country had for several years been suffer-
ing from a drought and water levels were falling." This
statement, to our minds, sufficiently shows that the finding
of the trial court is sustained by the evidence in the respect
in which it is assailed by appellants. Their efforts to
develop water after the making of the contracts must have
been preceded by a knowledge of the untruth of the repre-
sentations attributed to them by the finding. This remark
plainly applies to their assertion, in particular, concerning
"a flow of water of 20 miner's inches." If they had known
that the statement was true the efforts made by them after
the deal was concluded would have been as unnecessary as
they were apparently unavailing. Not knowing that it was

true, they must have known that it was untrue. Considering the nature of the misrepresentation there is no middle ground.

[3] Appellants make the point that respondents' causes of action are barred by the statute of limitations, their claim being that the fraud practiced by them was discovered more than three years before the commencement of the actions, that being the period of limitation prescribed in such cases by Code of Civil Procedure, section 338, subdivision 4. We have examined the evidence pointed out by appellants upon this question and conclude, without repeating it, that it utterly fails to support the contention made.

Other points are made by appellants, but, considering the conclusion expressed above, it is not necessary that they be examined.

Both judgments are affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 29, 1923.

All the Justices concurred.